IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GLORIA MORISAKI,

    Plaintiff,                        2:09-cv-0298 MCE DAD

    v.

DAVENPORT, ALLEN &
MALONE, INC.,                      FINDINGS AND RECOMMENDATIONS

    Defendant.

                               /

This matter came before the court on December 18, 2009, for hearing on plaintiff's motion for default judgment (Doc. No. 9). Lara R. Shapiro, Esq. appeared telephonically for plaintiff. No appearance was made on behalf of defendant. Having considered all written materials submitted with respect to the motion, and after hearing oral argument, the undersigned recommends that the motion for default judgment be granted.

## **PROCEDURAL BACKGROUND**

Plaintiff initiated this action under the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq., and the California Rosenthal Fair Debt Collection Practices Act (Rosenthal Act), California Civil Code § 1788, et seq. In her complaint filed February 3, 2009, plaintiff seeks actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A), costs of litigation and reasonable attorney's

1

fees pursuant to 15 U.S.C. § 1692k(a)(3), actual damages pursuant to California Civil Code § 1788.30(a), statutory damages of $1,000.00 per violation for knowingly and willfully committing violations pursuant to California Civil Code § 1788.30(b), actual damages for emotional distress suffered as a result of defendant's intentional, reckless, and/or negligent invasions of privacy in an amount to be determined at trial; and punitive damages.

Despite being served with process, defendant failed to appear in this action. Pursuant to plaintiff's request, the Clerk of the Court entered defendant's default on June 8, 2009. (Doc. No. 8.) On September 25, 2009, plaintiff filed the instant motion, noticing it for hearing before the undersigned pursuant to Local Rule 302(c)(19). Plaintiff subsequently re-noticed the motion for hearing on December 18, 2009. Despite being served with plaintiff's request for entry of default and all papers filed in connection with plaintiff's motion for default judgment, defendant did not oppose entry of default and neither filed opposition nor appeared at the hearing on plaintiff's motion for default judgment.[1]

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee

---

[1] While the defendant in this case was served by plaintiff with both her request for entry of default and her motion for default judgment, such service generally is not required. See Fed. R. Civ. P. 55(b)(2) (requiring that written notice of an application for default judgment be served upon the party against whom judgment is sought only if that party "has appeared in the action"); Local Rule 135(d) (excusing parties from serving documents submitted to the court upon "parties held in default for failure to appear" unless a document asserts new or additional claims for relief against the defaulting parties). Plaintiff's counsel states in a declaration in support of the motion for default judgment, and she affirmed in open court at the hearing of the motion, that she had many conversations with defendant through Dena Johnson-Peterson, owner and representative of the company, about this action. See Wilson v. Moore & Associates, Inc., 564 F.2d 366, 368-69 (9th Cir. 1977) ("No party in default is entitled to 55(b)(2) notice unless he has 'appeared' in the action. The appearance need not necessarily be a formal one, i.e., one involving a submission or presentation to the court. In limited situations, informal contacts between the parties have sufficed when the party in default has thereby demonstrated a clear purpose to defend the suit."). Out of an abundance of caution, plaintiff prudently served defendant with all papers related to the motion for default judgment.

1  Cement Co. v. Howard Pipe & Concrete Products, 722 F.2d 1319, 1323 (7th Cir. 1983) (citing
2  Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also TeleVideo Sys., Inc. v.
3  Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).  Where damages are liquidated (i.e., capable of
4  ascertainment from definite figures contained in the documentary evidence or in detailed
5  affidavits), judgment by default may be entered without a damages hearing.  See Dundee, 722
6  F.2d at 1323.  Unliquidated and punitive damages, however, require "proving up" at an
7  evidentiary hearing or through other means.  Dundee, 722 F.2d at 1323-24; see also James v.
8  Frame, 6 F.3d 307, 310 (5th Cir. 1993).

9        Granting or denying default judgment is within the court's sound discretion, see
10 Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986), and the court is free to consider a
11 variety of factors in exercising that discretion, see Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th
12 Cir. 1986).  The court may consider such factors as:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action, (5) the possibility of a
> dispute concerning material facts, (6) whether the default was due
> to excusable neglect, and (7) the strong policy underlying the
> Federal Rules of Civil Procedure favoring decisions on the merits.

17 Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice, ¶ 55-05[2], at 55-24 to 55-26).

18 **ANALYSIS**

19       According to plaintiff's complaint, this action arises out of defendant's repeated
20 violations of federal and state consumer laws and the repeated invasion of plaintiff's personal
21 privacy by defendant and its agents during illegal efforts to collect a consumer debt.

22       Plaintiff alleges as follows.  She is a "consumer" as that term is defined by the
23 FDCPA, she incurred a financial obligation that meets the definition of a "debt" under the
24 FDCPA, and the debt was acquired by defendant for collection purposes.  Defendant attempted to
25 collect the debt as follows:  defendant contacted plaintiff's ex-husband, a third party, without
26 plaintiff's consent, communicated information to him about plaintiff's debt, and stated an intent

3

to sue plaintiff by the end of the week if the debt was not paid; defendant used abusive, harassing, and profane language when speaking to plaintiff on the telephone; on more than one occasion, defendant failed or refused to identify itself by providing the individual debt collector's name or the name of the debt collection company; defendant threatened plaintiff with a lawsuit on at least two separate occasions, without intending to take steps toward initiating any legal proceeding; defendant threatened to make false and negative reports to consumer reporting agencies and thereby to detrimentally affect plaintiff's credit score; and defendant attempted to deceive plaintiff's ex-husband into providing information about plaintiff by threatening legal proceedings if plaintiff's debt was not paid immediately.  Plaintiff alleges that she suffered actual damages as a result of defendant's illegal collection communications in the form of humiliation, anger, anxiety, emotional distress, fear, frustration, embarrassment, and other negative emotions, and further alleges that she suffered from unjustified and abusive invasions of her personal privacy at home and at work.

      Plaintiff's complaint alleges one cause of action under the FDCPA and one cause of action under the Rosenthal Act, with multiple violations alleged within each cause of action. The complaint prays for the following relief under the FDCPA:  actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of $1,000.00 under 15 U.S.C. § 1692k(a)(2)(A), and costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3).  The complaint also prays for the following relief under the Rosenthal Act:  actual damages under California Civil Code § 1788.30(a) and statutory damages of $1,000.00 per violation for knowingly and willfully committing violations under California Civil Code § 1788.30(b).  In addition, the complaint prays for actual damages for emotional distress suffered as a result of defendant's intentional, reckless, and/or negligent invasions of plaintiff's privacy and for punitive damages.

      By her motion for default judgment, plaintiff seeks an award of $75,000.00, comprised of $73,000.00 for actual damages under federal and state law, $1,000.00 for statutory damages under the FDCPA, and $1,000.00 for statutory damages under the Rosenthal Act.

Weighing the factors outlined in Eitel, 782 F.2d at 1471-72, the undersigned has determined that default judgment against defendant is appropriate. Defendant has made no showing that its failure to respond to the complaint is due to excusable neglect. Plaintiff's complaint is sufficient, and there is no reason to doubt the merits of plaintiff's substantive claims. In light of the defendant's failure to appear and lack of opposition to plaintiff's claims, there is no possibility of a dispute concerning the material facts underlying the action. Through the instant motion, plaintiff seeks a small award of statutory damages together with a substantial award of actual damages. While recognizing the public policy favoring decisions on the merits, the court finds that a decision on the merits has been rendered impossible by defendant's default. Because these factors weigh in plaintiff's favor, the undersigned will therefore recommend that plaintiff's motion for default judgment be granted.

After determining that default judgment is warranted, the court must next determine the terms of the judgment. Any relief granted may not be different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c).

The FDCPA provides that in a case brought by an individual seeking redress for a debt collector's failure to comply with the provisions of the statute, the court may award any actual damages sustained by the plaintiff as a result of such failure, as well as such statutory damages as the court may allow, but not exceeding $1,000. 15 U.S.C. § 1692k(a). In determining the amount of damages to award, the court is required to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). Similarly, the Rosenthal Act provides that a debt collector who violates the statute's provisions is liable to an individual plaintiff "in an amount equal to the sum of any actual damages sustained by the debtor as a result of the violation" and that a debt collector who willfully and knowingly violates the statute shall be liable to the debtor for a penalty "in such amount as the court may allow, which shall not be less than one hundred dollars ($100) nor greater than one thousand dollars

1 ($1,000)." California Civil Code § 1788.30(a) & (b).  Statutory damages may be awarded

2 cumulatively under both statutes.  15 U.S.C. § 1692n; California Civil Code § 1788.32.

3       Here, consistent with the allegations and prayer in her complaint, plaintiff seeks

4 actual and statutory damages.  The allegations of the complaint, accepted as true, support

5 plaintiff's request for actual and statutory damages for defendant's many violations of state and

6 federal law.  Specifically, plaintiff requests an award of $73,000.00 for actual damages on both

7 causes of action, $1,000.00 for statutory damages on her federal cause of action, and $1,000.00

8 for statutory damages on her state cause of action, for a total of $75,000.00.

9       The FDCPA does not define "actual damages," and the Ninth Circuit has not yet

10 decided whether a plaintiff must prove the elements of a claim for intentional infliction of

11 emotional distress under state law in order to recover emotional distress damages, or whether

12 those elements need not be proven so long as plaintiff has tendered evidence substantiating that

13 she suffered emotional distress as a result of the defendant's FDCPA violations.  Riley v.

14 Giguiere, 631 F. Supp. 2d 1295, 1314-15 (E.D. Cal. 2009) (Karlton, J.)  The undersigned is

15 persuaded by the line of cases finding that a plaintiff need only offer evidence that she suffered

16 emotional distress as a result of the defendant's FDCPA violations in order to recover emotional

17 distress damages.  See Riley, 631 F. Supp. at 1315-16; Panahiasl v. Gurney, No. 04-04479, 2007

18 WL 738642, at *1 (N.D. Cal. Mar. 8, 2007).  Such an approach appears to be particularly

19 appropriate in the context of an unopposed motion for default judgment.  See Brablec v. Paul

20 Coleman & Assocs., P.C., No. CIV S-08-1843 MCE GGH, 2010 WL 235062, at *2 (E.D. Cal.

21 Jan. 21, 2010) (Magistrate Judge Hollows finding it unnecessary to determine which standard

22 should apply where the motion for default judgment was unopposed).

23       Moreover, plaintiff has submitted a detailed affidavit in support of her request for

24 emotional distress damages.  Plaintiff declares as follows.  She sought legal counsel in January

25 2009 because she was being harassed by defendant, whose agents had contacted her several times

26 and were abusive, threatened litigation, and threatened to ruin her credit.  They had also

contacted her ex-husband, disclosed to him that she owed a debt, and told him they would be filing a lawsuit against her. The first such contact was in early December of 2008. The caller was rude and abusive and told plaintiff that she owed Delta ADT $800.00 and had to pay or they would take her to court. Plaintiff told the caller that she did not owe anything to ADT, that she had cancelled the service in March or April of 2008 because she had moved and was told that ADT could not transfer the service. Plaintiff asked the caller for verification of the alleged debt, but she never received a validation letter to verify the origin of the debt, despite numerous requests for such validation. Next, defendant began faxing letters to plaintiff at her place of employment and calling her there. She requested that they stop contacting her at work by phone and fax. Then defendant contacted plaintiff's ex-husband. Next, defendant contacted plaintiff's employer by fax, asked how much she was paid and advised the employer that they were filing a lien against her income to collect on a debt. Without validation of the debt, plaintiff continued to refuse to pay it and was continually harassed. She disputed the debt, told defendant she did not owe anything, and asked them to stop calling her. Defendant started calling her co-workers and sometimes called plaintiff three times a day. Defendant told one of plaintiff's co-workers that plaintiff was a bad employee and owed them money, provided details, and then asked the co-worker to tell plaintiff's boss that plaintiff should not be trusted or employed by good people. This created a great deal of humiliation for plaintiff at work and interfered with her work relationships. Defendant called plaintiff repeatedly at home and yelled so loudly over the phone that she owed them money and that they were going to sue her that plaintiff's children could hear the threats and were upset and asked plaintiff if she was going to be sued and if it meant they would have to move.

    As required by 15 U.S.C. § 1692k(b)(1), the court has considered "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." The court notes defendant's refusal to validate the alleged debt despite plaintiff's repeated requests and despite plaintiff's plausible

assertion of having cancelled the service after moving to a location where the service could not be transferred.  Defendant's refusal to provide such validation and defendant's persistence in attempting to collect an unvalidated debt were clearly intentional.  The sheer number of parties to whom defendant disclosed plaintiff's personal business, including her ex-husband, her employer, and multiple co-workers, as well as defendant's egregious attempts to harm plaintiff's employment, defendant's threats of harming plaintiff's credit, and defendant's reckless disregard for plaintiff's children – all support an award of emotional distress damages at the high end of the range of awards made by courts across the country.  This is not a case in which the defendant's violations of the statutes were mere technicalities.  In addition, defendant's conduct continued for months.  Defendant's abusive collection efforts are the kind that prompted both Congress and the California legislature to enact statutory schemes designed to prevent unfair debt collection practices.  See 15 U.S.C. § 1692(a)-(e); California Civil Code § 1788.1(a)-(b).

        The amount plaintiff seeks for emotional distress damages, although high, is unopposed and appears to be warranted by the outrageous conduct described in plaintiff's complaint and declaration.  See Panahiasl, 2007 WL 738642, at *2 (awarding to one plaintiff $50,000 in actual damages due to emotional distress arising from FDCPA violations that caused her to suffer embarrassment, fear, anger, panic, humiliation, nervousness, crying fits, difficulty eating and sleeping, and diarrhea); Brablec, 2010 WL 235062, at *2 (awarding a consumer $25,000 in actual damages due to emotional distress stemming from FDCPA violations).  Cf. Hartung v. J.D. Byrider, Inc., No. 1:08-cv-00960 AWI GSA, 2009 WL 1876690, at *9-10 (E.D. Cal. June 26, 2009) (finding defendant's actions egregious but recommending that plaintiff's request for $50,000 in actual damages for emotional distress be reduced to $25,000 because plaintiff was exposed to defendant's actions for a limited period of time).  See also Clodfelter v. United Processing, Inc., No. 08-CV-2131, 2008 WL 4225557, at *5 (C.D. Ill. Sept. 12, 2008) (granting an award of $100,000 in actual damages on a motion for default judgment against a debt collector with a long history of abusive and inherently degrading tactics where the debt

collector called plaintiff, his family members, his employer, and numerous third-parties and threatened criminal prosecution for failure to pay a $400 debt that the plaintiff did not owe). The undersigned will recommend that the district court grant plaintiff's motion for default judgment and award damages in the amounts requested.

### CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (Doc. No. 9) be granted; and

2. The district court enter a default judgment against defendant Davenport, Allen & Malone, Inc. and in favor of plaintiff in the total amount of $75,000.00, comprised of an award of $73,000.00 in actual damages under federal and state law, $1,000.00 in statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A), and $1,000.00 in statutory damages pursuant to California Civil Code § 1788.30(b).

These findings and recommendations are submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and shall serve a copy of the objections on all parties. Any reply to objections shall be filed and served within seven days after the objections are served. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 21, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1\orders.civil\morisaki0298.oah121809.mdj.f&r